**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAWN CAREY, MSS CAPITAL, LLC, HUNTS ROAD, LLC, ION1 LLC, BRICKELL CAPITAL SOLO 401K TRUST, KAILEY LEWIS, EDWARD REINLE, EMANUEL VALADAKIS and ZITAH MCMILLAN-WARD, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-07551 |
| Plaintiffs, | |
| v. | |
| MICHAEL MOE, PETER B. RITZ, LZG INTERNATIONAL, INC., ROGER HAMILTON, and GENIUS GROUP LIMITED, | |
| Defendants. | |
| GENIUS GROUP LIMITED, | Case No. 1:24-cv-08464 |
| Petitioner, | |
| v. | |
| LZG INTERNATIONAL, INC., MICHAEL THOMAS MOE and PETER RITZ, | |
| Respondents. | |
| VSTOCK TRANSFER, LLC, | |
| Nominal Respondent. | |
| LZG INTERNATIONAL, INC.'S SHAREHOLDERS, | |
| Intervenor. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR ALTERNATIVE SERVICE UNDER RULE 4(F)(3)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

    A.    Email Service on GNS Through Its US Counsel is Proper................................... 6

    B.    Email Service on Hamilton Through GNS's US Counsel is Proper.................... 8

    C.    The Hague Convention Does not Apply, and Even If it Did, Email Service Would not

Offend Hague .................................................................................................... 9

CONCLUSION.................................................................................................................. 11

## **TABLE OF AUTHORITIES**

### **Cases**

*Aircraft Engine Lease Fin., Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 CIV. 1758, 2021 WL 6621578 (S.D.N.Y. Apr. 23, 2021).........................11

*Allbirds, Inc. v. Giesswein Walkwaren AG*, 19-CV-05638-BLF, 2019 WL 11216184 (N.D. Cal. Dec. 18, 2019) .......................................10

*AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 WL 3457452 (S.D.N.Y. June 1, 2015)..............................................5

*Atlantica Holdings, Inc. v. BTA Bank JSC*, 2014 WL 12778844  (S.D.N.Y. Mar. 31, 2014).............................................................5

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 2020 WL 5350271 (S.D.N.Y. Sept. 4, 2020) ............................................7

*Carrillo v. Black Diamond Equip., Ltd.*, 23-CV-115-S, 2023 WL 5312089 (D. Wyo. July 25, 2023)...........................................11

*Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, 22 CIV. 4594 (PGG), 2022 WL 2758417 (S.D.N.Y. July 14, 2022) ...........11

*F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272 (S.D.N.Y. Aug. 7, 2013) .........5, 10

*Giuffre v. Andrew*, 560 F. Supp. 3d 744 (S.D.N.Y. 2021)..............................9

*In re One Apus Container Ship Incident on November 30, 2022*, 2022 WL 17370122 (S.D.N.Y. Dec. 2, 2022)..........................................7

*Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013) ....................5

*Louis Vuitton Malletier v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, 2024 WL 4487695 (S.D. Fla. Aug. 27, 2024) ..........................................................10

*Mattel, Inc. v. Animefun Store*, 2020 WL 2097624 (S.D.N.Y. May 1, 2020) ............6

*NYKCool A.B. v. Pac. Intern. Services, Inc.*, 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015)...................................................5

*Orient Plus Int'l Ltd. v. Baosheng Media Group Holdings Ltd.*, 2024 WL 2317715, (S.D.N.Y. May 22, 2024)...........................................8

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) ..............5

*RSM. Corp. v. Fridman*, 2007 WL 1515068 (S.D.N.Y. May 24, 2007)....................4

*S.E.C. v. Anticevic*, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) ................................... 4

*ShelterZoom Corp. v. Goroshevsky*, 19-CV-10162 (AJN), 2020 WL 4252722
(S.D.N.Y. July 23, 2020) ...................................................................................... 10

*Stream SICAV v. Wang*, 989 F. Supp. 2d 264 (S.D.N.Y. 2013) ........................... 8, 9

*W.J. Deutsch & Sons Ltd. v. Zamora*, 2023 WL 5609205 (S.D.N.Y. Aug. 30,
2023) ...................................................................................................................... 7

*Washington State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877,
(S.D.N.Y. Sept. 21, 2018) ..................................................................................... 7

*Zanghi v. Ritella*, 2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) ............................... 6

**<u>Rules and Statutes</u>**

Fed. R. Civ. P. 4(f)(3) ............................................................................................ 4

Plaintiffs, pursuant to this Court's powers under Rule 4(f)(3), move for an order authorizing alternative service on Defendants Genius Group Limited ("GNS") and its CEO, Roger Hamilton, through GNS's US counsel, via email.

Defendants GNS and its CEO, Hamilton, are playing a game of hide-and-seek with service of process, despite their extensive involvement in this litigation. GNS's own SEC filings point to a New York-based agent for service of process, yet that address turns out to be invalid. Meanwhile, Defendants' U.S. counsel are knee-deep in this case—corresponding with this Court, filing a motion to stay these proceedings, and arguing against consolidation of this first-filed Class Action with GNS's second-filed case—and undoubtedly keeping their clients well-informed. Plaintiffs do not have to chase Defendants across international borders or through the labyrinth of the Hague Convention when their U.S. lawyers are not only aware of the claims pending in this action, but actively defending them. Service on GNS and Hamilton via email through GNS's U.S. counsel is not just reasonable, but the only solution to cut through Defendants' efforts to dodge service and move this case forward.

## BACKGROUND

As detailed in the Class Action Complaint, GNS and Hamilton violated federal securities laws, by colluding with Peter Ritz and Michael Moe to effectuate a fraudulent merger between GNS and LZG International, Inc. ('LZGI"), which was conceived to enrich Ritz and Moe, while allowing GNS to raise millions of dollars in funding. *See generally* DE 1.

Prior to filing the Class Action Complaint, counsel for Plaintiffs exchanged emails with Hamilton and with GNS's then-counsel to discuss the issues which are now pending in litigation. *See* Declaration of Bernardo Franco in Support of Motion for Alternative Service ("Franco Decl.") at ¶ 4.

Following the filing of the Class Action complaint, counsel for Plaintiffs asked GNS's

- 1 -

then-counsel, Mr. Hoffner, who is based in New York, if he would accept service on behalf of both GNS and Hamilton. Mr. Hoffner, however, declined. *Id*. at ¶ 5.

After GNS's US counsel refused to accept service on behalf of the Singapore corporation and its Singapore-based CEO, Plaintiffs reviewed GNS's SEC filings and learned that "[GNS's] agent for service of process in the United States is Jolie Kahn, Esq., 12 E. 49th Street, 11th floor, New York, NY 10017."[1] Not only is Ms. Kahn GNS' agent for service of process, but also GNS's key authorized representative in the United States.

In that capacity, Ms. Kahn recently signed one of GNS's SEC filings pertaining to the fraudulent merger at issue in this Class Action, representing to the SEC that "[p]ursuant to the Securities Act of 1933, the undersigned [Jolie Kahn], the duly authorized representative in the United States of Genius Group Limited, has signed this registration statement or amendment thereto in New York, NY on August 27, 2024."[2]

Because she possesses broad authority to act on behalf of the corporation, "*all* communications,"[3] including communications addressed to Hamilton, must be sent to the care of Ms. Kahn, as reflected in GNS's SEC filings:

**Roger James Hamilton, Chief Executive Officer**
**C/O**
**Jolie Kahn, Esq.**
**12 E. 49th Street, 11th floor**
**New York, NY 10017**
**Telephone: (516) 217-6379**
**Facsimile: (866) 705-3071**
(Name and Address of Agent For Service).[4]

---

[1] https://www.sec.gov/Archives/edgar/data/1847806/000149315224034405/forms-8.htm (Form S-8, filed on August 29, 2024. *See also* https://www.sec.gov/Archives/edgar/data/1847806/000149315224028927/formf-1a.htm (Form F-1/A, filed on July 24, 2024).

[2] https://www.sec.gov/Archives/edgar/data/1847806/000149315224034004/formf-1a.htm (GNS's Form F-1/A, dated August 14, 2024, in which GNS represented that: "On March 14, 2024, Genius Group acquired FatBrain AI for a total consideration of 7,387,378 Genius Group Shares . . . for the total consideration of $29,327,892."

[3] https://www.sec.gov/Archives/edgar/data/1847806/000149315224034004/formf-1a.htm (GNS's Form F-1A, filed on August 27, 2024) (emphasis added).

[4] https://www.sec.gov/Archives/edgar/data/1847806/000149315224034405/forms-8.htm (GNS's Form S-8, filed on

Thus, Plaintiffs arranged for service on both GNS and Mr. Hamilton through Ms. Kahn.

However, upon visiting the address where GNS represented their US agent and authorized representative's office was located, Plaintiffs' process server discovered that "the WeWork office where the Corporate Defendant Genius Group Limited was renting office was moved to an undetermined address." Franco Decl., Exhibit B.

Given that GNS had provided an invalid address of its agent for service, Plaintiffs' process server "called the registered agent Jolie Kahn, Esq., at 516-217-6379 on November 20, 2024, at 1:50 P.M., and explained the general nature of the papers to the registered agent who then refused to arrange for a convenient time for service with Deponent." *Id*.

Since then, Plaintiffs' process server made further attempts to contact Ms. Kahn, but could not reach her. Franco Decl. at ¶ 10.

Recently, Hamilton, in his capacity as CEO, signed and submitted to the SEC a Form 6-K on behalf of GNS, in which the corporation stated that it had retained a US-based law firm named "The Basile Law Firm P.C.," to "provide litigation services prosecuting ***or defending*** the company in action **involving LZGI** . . ."[5]

The Basile Law Firm currently represents GNS in a closely related action (filed after the Plaintiffs initiated this Class Action) which has been reassigned to this Court and which pertains to the same parties, same transaction, and same issues pending in this case. *See Genius Group Limited v. LZG International, Inc. et al*, Case No. 1:24-cv-08464-MKV. In its related, second-filed action, GNS relies on the sworn declaration of Hamilton, and expressly incorporates the

---

August 29, 2024). *See also* https://www.sec.gov/Archives/edgar/data/1847806/000149315224019663/form20-f.htm (GNS's Form 20-F of May 15, 2024, where GNS made several representations regarding the merger at issue in this Class action, including that "[t]he FatBrain AI acquisition has added $51.8 million in revenue to the Group in the year ended Dec 31, 2023, which represents 74% of the $70.4 million pro forma Group revenue during this period, while the rest of the Group generated $18.7 million in pro forma revenue. For the year ended December 31, 2023, the audited group revenue was $23.1 million compared to $18.2 million in 2022.").
[5] https://www.sec.gov/Archives/edgar/data/1847806/000149315224042620/form6-k.htm (emphasis added).

allegations raised in the Class Action Complaint into its own Petition. *Id*.

Between December 4 and 5, 2024, counsel for Plaintiffs emailed and conferred with GNS's US counsel over this first-filed Class Action and GNS's second-filed case, and whether both cases should be consolidated. Franco Decl. at ¶ 13. *See also* Franco Decl., Exhibit C.

On December 10, 2024, counsel for GNS confirmed to this Court that Defendants were well-aware of the Class Action pending before this Court. However, when asked by this Court whether counsel for GNS would accept service on behalf of their clients, GNS's US lawyers steadfastly declined. *See* Franco Decl., Exhibit D.

As further proof that GNS and Hamilton are well-aware of this action, GNS submitted a letter to this Court, on December 13, 2024, expressing its position as to several aspects of this case. *See* Franco Decl., Exhibit E. GNS also filed a motion to stay this matter, on December 17, 2024, in its related second-filed action pending before this Court. *See* Franco Decl., Exhibit F.

## **ARGUMENT**

Under Fed. R. Civ. P. 4(f)(3), a party may serve a foreign defendant "by other means not prohibited by international agreement, as the court orders." The only limitations in Rule 4(f)(3) are that (1) service must be directed by the court, (2) it must not be prohibited by international agreement, and (3) must be "reasonably calculated" to give notice to a defendant. *Id*.

No particular means of alternative service are preferred under subsection (3), and "[t]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *RSM. Corp. v. Fridman*, 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007). *Accord S.E.C. v. Anticevic*, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) ("A court is afforded wide discretion in ordering service of process under Rule 4(f)(3)[,]" and "[t]he Rule provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case.")

(internal quotations and citation omitted).

To be sure, "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). *See also AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015) ("a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3).").

And, as this Court has already held, service on a foreign defendant's US counsel "is a common form of service ordered under Rule 4(f)(3)." *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013). *Accord Atlantica Holdings, Inc. v. BTA Bank JSC*, 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014) (authorizing service on foreign corporation's US counsel where "[t]here is no dispute that [US Law Firm]" not only "has both actual notice of the instant action and actual possession of the Complaint[,]" but also "represented [foreign corporation] in connection with [the issue] that gave rise to this lawsuit . . .").

Specifically, this Court has "the power under Rule 4(f)(3) to order service on [Defendants] by directing [Plaintiffs] to email the papers to the lawyers" who represent Defendants in the United States. *NYKCool A.B. v. Pac. Intern. Services, Inc.*, 2015 WL 998455, at *3 (S.D.N.Y. Mar. 5, 2015) (authorizing service of foreign defendant through its US counsel, via email). "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013). *Accord Zanghi v. Ritella*, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020); *Mattel, Inc. v. Animefun Store*, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020).

Here, alternative service on GNS and Hamilton, through GNS's US counsel, via email, is proper, because (1) GNS is well-aware of the present case, and retained US counsel to defend it in connection with the very transaction at issue in this proceeding, (2) GNS's US counsel have already submitted a letter to this Court to express their views of this case, have moved to stay the present Class Action, and therefore are capable of promptly informing GNS and its CEO that the Court has authorized service on them, via email, through their US counsel; (3) GNS's registered agent (upon whom service on both GNS and Hamilton would be valid) has been evading service, and (4) service on GNS's US counsel will occur domestically, would not involve transmission of documents abroad, and will not implicate the Hague Convention.

### A.    Email Service on GNS Through Its US Counsel is Proper

It is undisputed that GNS is well-aware of the present litigation, having retained US Counsel (The Basile Law Firm) to defend the corporation in matters involving the LZGI transaction. In fact, pursuant to their efforts to defend the corporation in connection with the GNS-LZGI merger, GNS's US counsel submitted a letter to this Court expressing their views on this case, and filed a motion to stay these proceedings, only after initiating a separate, second-filed action, on behalf of GNS, which pertains to the same parties, same transaction, and the same underlying facts at dispute in this Class Action.

It is clear that "[The Basile Law Firm's] relationship with [GNS] is well established and extends beyond any limited appearance in this lawsuit[,]" given that "[The Basile Law Firm] has assisted [GNS]" to "pursu[e] litigation" relating to the GNS-LZGI merger in this Court. *RSM*, at *6 (there is no "controlling law", under Rule 4(f)(3), providing that "a court may not authorize an attorney in the appropriate circumstance to receive service of process on behalf of a client located abroad[,]" and holding that a "Court-ordered service on counsel made under Rule 4(f)(3) serves as effective authorization 'by law' for counsel to receive service.").

- 6 -

On top of that, GNS's December 13th letter to this Court and its motion to stay this action serves as further proof that Defendants' US counsel have been protecting their interests in connection with this case, making it " readily apparent that [GNS] is fully aware of these proceedings, for which he has retained counsel not only for the purpose of filing a motion to [stay this action], but also for the purpose of raising other issues that [it] has sought to place before the Court . . ." *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 2020 WL 5350271, at *11 (S.D.N.Y. Sept. 4, 2020).

Indeed, even if GNS was unaware of the present case, service on GNS through its US counsel, via email, would indisputably "apprise [GNS] of the litigation," because "[The Basile Law Firm] has continuously represented [GNS] in connection with its disputes with [LZGI]" and "[GNS] does not contest that it received actual notice of th[is] [action]. *W.J. Deutsch & Sons Ltd. v. Zamora*, 2023 WL 5609205, at *8 (S.D.N.Y. Aug. 30, 2023). *Accord Washington State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *9 (S.D.N.Y. Sept. 21, 2018) (authorizing service on foreign corporation's US counsel, where counsel "recently represented [unserved foreign corporation] in another matter in this district" and "currently represents [foreign corporation] in connection with a closely related [proceeding]").

Finally, service of "defendant [GNS], which is located in Singapore," via email sent to GNS's "United States-based counsel," is "likely to reach the defendant, such that service would comport with due process." *In re One Apus Container Ship Incident on November 30, 2022*, 2022 WL 17370122, at *4 (S.D.N.Y. Dec. 2, 2022). In fact, "[GNS's] counsel has appeared in" a related action, in this Court, "has a registered email with the Electronic Court Filing system, and has responded to [Plaintiffs'] counsel from [their] email address as recently as [December, 2024]". *Id.*

**B.**     <u>Email Service on Hamilton Through GNS's US Counsel is Proper</u>

Hamilton is GNS's CEO, a corporation he presumably controls. Not only has he spearheaded the GNS-LZGI merger, but, in his capacity as CEO, Hamilton executed and filed GNS's Form 6-K which disclosed that GNS had retained U.S. based counsel to prosecute or defend GNS in connection with the LZGI transaction at issue in this case.

Of course, there is no question that Hamilton is aware of this lawsuit and in regular communication with GNS's U.S. counsel regarding this matter, having also provided a sworn declaration in support of GNS's motion for a preliminary injunction, which GNS submitted in its related, second-filed action.

Courts in this District "have sensibly held that service on a high-level employee's corporate employer, or counsel for that employer, is 'reasonably calculated' to apprise the employee of the pendency of the action and therefore comports with due process." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 279 (S.D.N.Y. 2013).

"[O]bviously, [Hamilton] is the . . . Chief Executive Officer of [GNS] and it is impossible to imagine that a corporation's attorney would not advise the corporation's . . . Chief Executive Officer of the fact that service destined for that officer had been made upon its attorney." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (authorizing service on US "attorneys for the corporation for which [the unserved individual defendant] is the Chief Executive Officer" noting that "[u]se of these methods would not run afoul of the Hague Convention since in both instances no documents would be transmitted abroad"). *Accord Orient Plus Int'l Ltd. v. Baosheng Media Group Holdings Ltd.*, 2024 WL 2317715, at *1 (S.D.N.Y. May 22, 2024) (authorizing service on foreign corporation's CFO as well as on corporation's Director via email, "by serving" the "[corporation's] U.S. counsel").

And "[g]iven the certainty that service on [GNS's] attorneys" would necessarily "result in

notice to [Hamilton], and given that service via the Hague Convention would be a pointless and lengthy exercise, an order of alternative service is justified." *GLG*, 287 F.R.D. 262, at 267.

After all, "it is all but inconceivable that [GNS] and its counsel would be unable to inform [Hamilton] of this lawsuit, in the unlikely event they have not already done so. Service on [Hamilton] through service on [GNS] and its counsel is, therefore, 'reasonably calculated' to apprise [Hamilton] of the pendency of this action. It will therefore comport with due process." *Stream SICAV*, 989 F. Supp. 2d 264, at 279–80. *Accord In re Sinohub, Inc. Sec. Litig.*, 2013 WL 4734902, at *1 (S.D.N.Y. Aug. 14, 2013) (where there was "no question that [CEO] is aware of this [securities fraud] lawsuit and in regular communication with [corporation's US counsel][,]" the Court held that "alternate service through [foreign corporation's US counsel] comports with due process as to [CEO]").

### C.    The Hague Convention Does not Apply, and Even If it Did, Email Service Would not Offend Hague

While Singapore recently became a signatory to the Hague convention, here, "the Hague Convention does not apply" because Plaintiffs' proposed alternative "service is made on a foreign citizen's agent within the United States." *Orient Plus*, at *3.

Despite the fact that GNS is a Singapore corporation and Hamilton resides in Singapore, "service on [GNS's] counsel occurs domestically, and does not involve transmission of documents abroad, [and] does not 'implicat[e]' the Hague Convention." *Jian Zhang*, 293 F.R.D. 508 at 515 (internal citations omitted). *Accord Giuffre v. Andrew*, 560 F. Supp. 3d 744, 746 (S.D.N.Y. 2021) (rejecting argument that the Hague Convention applied, where "the proposed form of alternative service is 'service on [defendant's] United States counsel,'" which "will not require transmittal of any documents abroad and accordingly will not be subject to the Convention").

And even if the Hague Convention applied, "nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)." *GLG*, 287 F.R.D. 262, at 266. *Accord Jian Zhang*, 293 F.R.D. 508, at 512 ("So long as [Rule 4(f)(3)'s] conditions are met, it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful."); *Allbirds, Inc. v. Giesswein Walkwaren AG*, 19-CV-05638-BLF, 2019 WL 11216184, at *2 (N.D. Cal. Dec. 18, 2019) ("[Plaintiff], therefore, is not required to attempt service via letters rogatory under Rule 4(f)(2) before requesting an order for substituted service under Rule 4(f)(3).").

To be sure, "[n]umerous courts have held that service by email does not violate any international agreement," even when a country objects to Article 10 of the Hague Convention. *ShelterZoom Corp. v. Goroshevsky*, 19-CV-10162 (AJN), 2020 WL 4252722, at *1 (S.D.N.Y. July 23, 2020) (citing *F.T.C. v. Pecon Software Ltd.*, No. 12-cv-7186 (PAE), 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013)).

Here, although Singapore and the United States "are signatories to the Hague Convention" the "Convention does not specifically preclude service of process via e-mail[.]" *Louis Vuitton Malletier v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, 2024 WL 4487695, at *1 (S.D. Fla. Aug. 27, 2024) (holding that "[w]here a signatory nation" such as "Singapore" has "objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail[.]").

Finally, serving GNS and Hamilton through letters rogatory, pursuant to the Hague

Convention, will not only cause Plaintiffs to spend thousands of dollars, but will also greatly delay this case, as it would take several months to effectuate service through the Hague Convention. Because service through Convention Hague is ultimately at the discretion of the foreign country's central authority, it may several months to be completed, all while still carrying the risk of being ignored by the foreign authorities.

Under these circumstances, the costs and "lengthy delays in service under the Hague Convention are sufficient to show that alternative service under Rule 4(f)(3) is warranted." *Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, 22 CIV. 4594 (PGG), 2022 WL 2758417, at *5 (S.D.N.Y. July 14, 2022) (holding that "in light of the lengthy delay involved in serving [defendant] under the Hague Convention, [plaintiff's] proposed alternative service via email is warranted in this case."). *Accord Aircraft Engine Lease Fin., Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 CIV. 1758, 2021 WL 6621578, at *1 (S.D.N.Y. Apr. 23, 2021) ("[B]ecause service through the Hague Convention would unnecessarily delay this case, the Court finds that intervention is necessary."); *GLG*, 287 F.R.D. at 266 ("Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."); *Carrillo v. Black Diamond Equip., Ltd.*, 23-CV-115-S, 2023 WL 5312089, at *2 (D. Wyo. July 25, 2023) (where "Plaintiff inquired into service of the Defendants under the Haque Convention and have discovered that service would take five or more months and could cost in excess of $4,000[,]" the Court held that "alternative methods of service are appropriate.").

## CONCLUSION

For the reasons discussed above, Plaintiffs request that this Court enter an order (a) authorizing Plaintiffs to effect service upon Defendants GNS and Hamilton by emailing copies of the Class Action Complaint and Summonses to GNS's United States counsel, Mark R. Basile,

Christopher M. Basile, and Joseph F. Rose, of The Basile Law Firm P.C., to the following email

addresses:          mark@thebasilelawfirm.com,          chris@thebasilelawfirm.com,          and

joe@thebasilelawfirm.com, and (b) granting any other and further relief as this Court may deem

just and proper.

Dated: December 20, 2024.

Respectfully submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Tel:  305.297.1878

By:  */s/ Jeffrey W. Gutchess*
Jeffrey W. Gutchess
jeff@axslawgroup.com
Bernardo N. de Mello Franco
bernardo@axslawgroup.com
eservice@axslawgroup.com

*Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on December 20, 2024, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

By: <u>*/s/ Jeffrey W. Gutchess*</u>
Jeffrey W. Gutchess