UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN CAREY, MSS CAPITAL, LLC, HUNTS ROAD, LLC, ION1 LLC, BRICKELL CAPITAL SOLO 401K TRUST, KAILEY LEWIS, EDWARD REINLE, EMANUEL VALADAKIS and ZITAH MCMILLAN-WARD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHAEL MOE, PETER B. RITZ, LZG INTERNATIONAL, INC., ROGER HAMILTON, and GENIUS GROUP LIMITED,<br><br>    Defendants. | Case No. 1:24-cv-07551 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO APPOINT LEAD PLAINTIFF AND APPROVE AXS LAW GROUP, PLLC AS LEAD COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 4

    A.    The Court Should Appoint the Group as Lead Plaintiff ................................................... 4

        i.    The Group Filed the Class Action Complaint and Timely Filed This Motion for Lead Plaintiff Status ................................................................................................... 5

        ii.    The Group Has the Largest Financial Interest in the Relief Sought by the Class ...... 5

        iii.    The Group Otherwise Satisfies the Requirements of Rule 23 ................................. 6

    B.    The Court Should Approve the Group's Selection of Lead Counsel .............................. 8

CONCLUSION ................................................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*AMJ Global Entertainment, LLC v. Migom Global Corp. et al*, Case No. 24-cv-06600-VSB ...... 9

*Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414 (S.D.N.Y. 2014) .............................................. 8

*Chilton v. Chiumento Group*, 365 Fed. Appx. 298 (2d Cir. 2010) ................................................ 4

*Faig v. Bioscrip, Inc.*, 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ............................................ 6

*Finocchiaro v. NQ Mobile, Inc.*, 2017 WL 1535382 (S.D.N.Y. Apr. 17, 2017) ............................ 6

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir.1992) .................................... 7

*Ladmen Partners, Inc. v. Globalstar Inc.*, 2007 WL 9813152 (S.D.N.Y. May 10, 2007) ............. 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................................................ 7

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011) .............................................................................. 7

*Vanamringe v. Royal Group Techs. Ltd.*, 237 F.R.D. 55 (S.D.N.Y. 2006) ................................... 7

**Rules and Statutes**

15 U.S.C. §78u-4(a)(3)(B) ........................................................................................................ 4, 6

Fed. R. Civ. P. 23 .................................................................................................................. 4, 6, 7

Plaintiffs, Shawn Carey, Hunts Road, LLC, Ion1 LLC, Brickell Capital Solo 401k Trust, Kailey Lewis, Edward Reinle, Emanuel Valadakis, and Zitah Mcmillan-Ward (together, the "Group"), respectfully submit this memorandum of law in support of the Group's Motion to Appoint Lead Plaintiff and Approve AXS Law Group, PLLC as Lead Counsel for the Class.

## INTRODUCTION

The Group filed this securities class action on behalf of all persons or entities who, between December 1, 2023 to September 25, 2024 (the "Class Period"), purchased or acquired the securities of Genius Group Limited ("GNS") on the NYSE or pursuant to other domestic transactions, as a result of the LZGI-GNS Merger (the "Class").

The Class Action Complaint alleges several violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) and seeks damages on behalf of the Class Members.

The Group moves this Court for an order: (i) appointing it as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (ii) approving the Group's selection of AXS Law Group, PLLC ("AXS Law") to serve as Lead Counsel.

The Group is the most adequate Lead Plaintiff because (a) it possesses a significant financial interest in the Action (they have collectively suffered over $2 million in losses) and (b) it satisfies Federal Rule of Civil Procedure 23, given that its claims are typical of the claims of the putative class, and the Group will fairly and adequately represent the interests of the Class.

Accordingly, the Group should be appointed Lead Plaintiff, and the Group's selection of AXS Law as Lead Counsel should be approved.

## BACKGROUND

As detailed in the Class Action Complaint, Defendants GNS and its CEO, Roger Hamilton, colluded with Peter Ritz and Michael Moe to defraud LZG International, Inc.'s ("LZGI")

1

shareholders, by manufacturing a stock-for-stock GNS-LZGI merger which was conceived to enrich Ritz and Moe, while allowing GNS to raise millions of dollars in funding. *See* DE 1.

As structured, the merger resulted in the sale of LZGI's key revenue generating asset to GNS (an asset that generates over $50 million in annual revenue) in exchange for restricted GNS stock of doubtful value, as GNS had never turned a profit since inception, was struggling financially, and could collapse at any moment.[1] *Id*. at ¶¶ 114-170.

To effectuate the merger, GNS assisted Ritz and Moe (1) cover up their diversion of millions of dollars of LZGI funds, and (2) conceal the wrongful issuance of more than 73 million LZGI shares (millions of which went to Ritz and Moe), which were issued after GNS announced the merger, without shareholder approval or compensation to LZGI. *Id*.  In addition, to close the deal, GNS gifted almost 18 million GNS shares to Ritz and Moe (making them two of the company's largest individual shareholders) and appointed both Moe and Ritz to its board of directors. *Id*.

As part of the conspiracy to defraud LZGI and its shareholders, GNS issued numerous materially false and misleading statements, including that it had received "[a]ll necessary approvals for the transaction from [LZGI] shareholders," when it had not.[2] *Id*.

Despite the lack of any shareholder approval for the merger, and the fraudulent issuance of LZGI shares, GNS proceeded with the deal using the unlawfully issued LZGI shares to devise an exchange ratio whereby each LZGI shareholders would receive 1 GNS stock for every 3.08 LZGI

---

[1] A few months before it announced a merger with LZGI, GNS reported, in its Form 20-F/A, that "due to recent changes in [GNS'] 2022 convertible loan terms in which company elected to pay all future payments in cash, negative cash flows, and continued net losses, management has determined that without additional capital raised, in the next twelve months, there is substantial doubt about [GNS'] ability to continue as a going concern." https://www.sec.gov/Archives/edgar/data/1847806/000149315223026701/form20-fa.htm.

[2] https://ir.geniusgroup.net/news-events/press-releases/detail/124/genius-group-release-additional-details-of-fatbrain-ai.

shares they owned. That ratio resulted in millions of dollars in losses to the Group and Class Members, which received 54% less GNS stock that they should have, while allowing GNS, Ritz and Moe to extract millions of dollars of ill-gotten gains from the merger. *Id*. at ¶ 162.

In addition, after it consummated the deal, GNS refused to release the shares it had issued to LZGI shareholders, resulting in even more losses to the Group and other Class Members. In March 2024, when GNS completed the Merger, it represented to the SEC and to all LZGI shareholders that, as consideration for the acquisition of LZGI, GNS issued "7,387,378 Genius Group Shares" which were meant to be released to LZGI shareholders "at fair market value of $3.97 per share (effecting for 1-for-10 reverse split) for the total consideration of $29,327,892[.]"[3] Since then, however, GNS shares have plummeted 85% and the stock is currently trading at $0.59.[4] That means that the GNS shares that were issued to LZGI shareholders as consideration for the merger are now worth $4,358,553 reflecting a market loss of nearly $25 million.

Even worse, despite its refusal to release the shares it had issued to the Group and other Class Members, GNS continues to rely on the revenues extracted from the GNS-LZGI merger to bolster its financial performance, and further deceive investors. *Id*. at ¶¶ 171-181.

Specifically, following its announcement that the merger had been completed, GNS established an at-the-market (ATM) offering facility to raise funds based on several misrepresentations concerning the GNS-LZGI merger. This ATM facility—critical to GNS's ability to raise capital—is fundamentally predicated on LZGI's revenues and projected performance which, as GNS represents in its SEC filings, "has added $51.8 million in revenue to

---

[3] https://www.sec.gov/Archives/edgar/data/1847806/000149315224034004/formf-1a.htm (GNS's Form F-1/A, dated August 14, 2024).
[4] https://www.marketwatch.com/investing/stock/gns.

the Group" representing a whopping "74% of the $70.4 million pro forma Group revenue" following the completion of the deal.[5] To date, GNS continues to raise millions of dollars based on the Merger, while withholding the release of GNS stock to the Group and other Class Members.

Significantly, while it raises funds based on the merger's purported success, GNS not only misrepresents its financial condition but perpetuates investor deception, securing additional capital through materially misleading disclosures in further violation of federal securities laws.

## ARGUMENT

### A.  The Court Should Appoint the Group as Lead Plaintiff

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members[.]" 15 U.S.C. §78u-4(a)(3)(B (i). In its analysis, the Court "shall adopt a presumption" that the most adequate plaintiff is the person that:

- (aa)   has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
- (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
- (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B) (iii); *see also Chilton v. Chiumento Group*, 365 Fed. Appx. 298, 299 (2d Cir. 2010) ("The plaintiff with the 'largest financial interest in the relief sought by the class' and who 'otherwise satisfies the requirements of [Fed.R.Civ.P.] 23' is presumptively the most adequate plaintiff.) (internal citations omitted). The Group meets each of these requirements and should be appointed Lead Plaintiff.

---

[5]   https://www.sec.gov/Archives/edgar/data/1847806/000149315224034004/formf-1a.htm (GNS's Form F-1/A, filed on August 27, 2024).

    i.        The Group Filed the Class Action Complaint and Timely Filed This Motion for Lead Plaintiff Status

The Group filed this Class Action Complaint on behalf of all persons and entities who, like the Plaintiffs, incurred losses due to Defendants' violations of the federal securities laws. Along with the Complaint, the members of the Group submitted signed certifications declaring their willingness to serve as Lead Plaintiff. *See* DE 1-1. By preparing and filing the complaint, submitting signed certifications to this Court, and timely filing the present motion, the Group has satisfied the first statutory requirement for appointment as Lead Plaintiff.[6]

    ii.       The Group Has the Largest Financial Interest in the Relief Sought by the Class

As detailed in the Complaint, the Group collectively owns 12,363,428 LZGI shares. *See* DE 1 at ¶¶ 14-22. Based on GNS's fraudulent 1:3.08 exchange ratio, GNS issued 401,410 GNS shares to the Group,[7] which GNS valued at $1,593,597.7.[8]

However, considering that the exchange ratio resulted in the Group (and other members of the Class) receiving at least 54% less GNS stock than they should have, the Group estimates it should have received 618,171.4 GNS shares, which GNS valued at $2,454,140.45. While GNS has

---

[6] Following the filing of the Class Action Complaint, the Plaintiffs, through their counsel, published a notice advising Class Members of this lawsuit, on October 25, 2024, on PR Newswire. *See* https://www.prnewswire.com/news-releases/axs-law-group-pllc-files-a-securities-class-action-on-behalf-of-lzg-international-inc-investors-lzgi-302287562.html. Thus, the deadline for filing this Motion was December 25, 2024, which was a federal holiday. Thus, by filing this Motion the next business day after a holiday, the Group's Motion is timely, as it was filed within 60 days of the publication of the notice.

[7] Following the Merger, GNS announced a 1-for-10 reverse stock split, which resulted in the LZGI shareholders receiving even less GNS stock. Precisely, while GNS had originally issued 73,873,780 GNS shares for the benefit of the LZGI shareholders, the reverse stock split reduced the amount of shares to 7,387,378. Thus, based on the 1:3.08 exchange ratio, and on the reverse stock split, the Group received 401,410 GNS shares, which GNS valued at $1,593,597.7

[8] In its F-1 Form, filed in August, GNS represented that, as consideration to the acquisition of LZGI, GNS issued "7,387,378 Genius Group Shares . . . at fair market value of $3.97 per share (effecting for 1-for-10 reverse split) for the total consideration of $29,327,892[.]" https://www.sec.gov/Archives/edgar/data/1847806/000149315224034004/formf-1a.htm (GNS's Form F-1/A, dated August 14, 2024).

refused to release the shares it had issued to the Group, as consideration for the merger, GNS's stock price plummeted from $3.97 (estimated by GNS as of the date of the merger) to $0.59. Thus, the shares the Group should have received are currently worth $364,721.126, resulting in more than $2 million in losses to the Group.

To the best of the Group's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Thus, the Group has the "largest financial interest" of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff" under the PSLRA.

iii.   The Group Otherwise Satisfies the Requirements of Rule 23

In addition to possessing a significant financial interest, the Group also "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).

When ruling on motions for appointment as lead plaintiff, "a court need not conduct a full analysis of whether the requirements of Rule 23 have been met." *Faig v. Bioscrip, Inc.*, 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013). At this stage of the proceeding, the Group, as proposed Lead Plaintiff, "only needs to make a preliminary showing that [it] satisfies the requirements of Fed. R. Civ. P. 23." *Finocchiaro v. NQ Mobile, Inc.*, 2017 WL 1535382, at *1 (S.D.N.Y. Apr. 17, 2017). The Group satisfies both requirements of Rule 23.

First, the Group's claims are typical of the claims of other members of the Class. "Typicality exists if claims 'arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Pirelli Armstrong Tire Corp. Retiree*

6

*Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)). However, "[t]he claims of class representatives need not be identical to the claims of the class to satisfy the typicality requirement." *Id.*

Here, the Group's and all other Class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical. To be sure, this Class Action is based on violations of the Securities Act where class members are relying on the same statements or omissions regarding the GNS-LZGI Merger as the factual basis of their claims. In addition, all financial losses alleged in this case are tied to the Merger and result from Defendants' actions and misrepresentations in connection with the deal.

Thus, "[t]he typicality requirement is easily met here. [the Group], like the other purported plaintiffs in this lawsuit," not only acquired "[GNS] securities during the class period" but "was injured by false and misleading representations made by defendants in violation of the Securities and Exchange Acts. Moreover, despite minor variations in factual allegations, each class member will make similar legal arguments." *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011). *Accord Vanamringe v. Royal Group Techs. Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006) (the "Group's typicality is easily met here as its 'claim arises from the same course of events' and 'each class member makes similar legal arguments to prove the defendants' liability' even if there are minor variations in the factual allegations.").

Second, the Group satisfies the adequacy requirement of Rule 23. Rule 23's adequacy requirement is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "The adequacy requirement is satisfied where: (1) there is no

7

conflict between the proposed lead plaintiff and the members of the class; (2) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is qualified, experienced, and generally able to conduct the litigation." *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 416–17 (S.D.N.Y. 2014) (internal citation and quotation marks omitted).

Here, the Group's financial interest should ensure vigorous advocacy on behalf of the class, the Group has no interests that are adverse to those of other class members, and the members of the Group signed a certification declaring their willingness to serve as Lead Plaintiff. Finally, the Group has retained AXS Law as Lead Counsel, which is experienced in prosecuting shareholders' disputes, complex commercial litigation, and securities class actions.

**B.     The Court Should Approve the Group's Selection of Lead Counsel**

The PSLRA grants authority to the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval, and "[a] Court will not disturb the Lead Plaintiff's choice of Lead Counsel unless necessary to protect the interests of the Class." *Ladmen Partners, Inc. v. Globalstar Inc.*, 2007 WL 9813152, at *2 (S.D.N.Y. May 10, 2007).

Here, the Group has retained AXS Law as Lead Counsel to pursue this litigation on its behalf and on behalf of all other members of the Class.

AXS law has offices in Miami, Los Angeles, and Washington D.C., and has extensive experience in complex commercial litigation, shareholder disputes, securities litigation, and class action litigation, having recovered over $600 million for its clients. Because of its successful representation of clients in high stakes litigation, across multiple industries, AXS Law is widely recognized as a preeminent litigation firm, having twice received the accolades of best litigation department of the year in South Florida, and a Chambers & Partners "Spotlight" firm for dispute

resolution in South Florida — an award that recommended AXS as "go-to counsel" for large corporate clients.

In addition to this case, AXS Law recently filed another securities class action in the Southern District of New York on behalf of several shareholders of a publicly traded company in the cryptocurrency and banking sector who have lost $750,000,000 in connection with the company's and its key officers' violations of federal securities laws. *See AMJ Global Entertainment, LLC v. Migom Global Corp. et al*, Case No. 24-cv-06600-VSB, pending in the United States District Court for the Southern District of New York.

Accordingly, the Court should approve the Group's selection of AXS Law as Lead Counsel for the Class.

## CONCLUSION

For the reasons discussed above, the Group respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B) and Section 27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B); (2) approve its selection of AXS Law as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: December 26, 2024.

Respectfully submitted,

        **AXS LAW GROUP, PLLC**
        2121 NW 2nd Avenue, Suite 201
        Miami, FL 33127
        Tel: 305.297.1878

        By: */s/ Jeffrey W. Gutchess*
        Jeffrey W. Gutchess
        jeff@axslawgroup.com
        Bernardo N. de Mello Franco
        bernardo@axslawgroup.com
        eservice@axslawgroup.com

        *Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 26, 2024, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

        By: */s/ Jeffrey W. Gutchess*
            Jeffrey W. Gutchess