P16DCarH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SHAWN CAREY, individually and
on behalf of all others
similarly situated,

                 Plaintiffs,

        v.                              24 CV 07551

MICHAEL MOE, ET AL.,

                 Defendants.
                                        Hearing
------------------------------x

GENIUS GROUP LIMITED,


                 Petitioner,

        v.                              24 CV 08464

VSTOCK TRANSFER, LLC,

                 Nominal Defendants,


        v.


LZG INTERNATIONAL, INC., ET
AL.,

                 Respondents,

                                        New York, N.Y.
                                        January 6, 2025
                                        1:00 p.m.

Before:

                 HON. MARY KAY VYSKOCIL,

                                        District Judge

P16DCarH

APPEARANCES

AXS LAW GROUP, PLLC
        Attorney for Plaintiff Shawn Carey, et al.
BY:  JEFFREY W. GUTCHESS

JOHN PARKER
        Attorney for Defendant Peter B. Ritz

HOFFNER, PLLC
        Attorney for Defendants
BY:  DAVID SCOTT HOFFNER

THE BASILE LAW FIRM, P.C.
        Attorneys for Petitioner
BY:  CHRISTOPHER M. BASILE
        JOSEPH FRANK ROSE

P16DCarH

(Case called.)

THE DEPUTY CLERK:  Counsel, starting with plaintiff, please state your appearance.

MR. GUTCHESS:  Jeff Gutchess from the AXS Law Group on behalf of class actions plaintiffs Shawn Carey, et al.

THE COURT:  All right.  When we say "the plaintiffs," you're the plaintiff in the case that was originally assigned to me, the first case assigned to me, *Carey v. Moe*, correct?

MR. GUTCHESS:  Yes, your Honor.

THE DEPUTY CLERK:  Defendants.

MR. HOFFNER:  David Hoffner, Hoffner, PLLC.  Your Honor, good afternoon.  I'm representing Genius Group Limited in the class action, the *Carey v. Moe* action.

THE COURT:  Are you actually appearing in this case?

MR. HOFFNER:  I filed a notice of appearance last week.

THE COURT:  Has your client yet been served?

MR. HOFFNER:  My client has not been served.

THE COURT:  Okay.  Why don't we get to that in a minute.

MR. HOFFNER:  Yes.

THE COURT:  All right.  Is that everybody in the *Carey v. Moe* case?

MR. PARKER:  No, your Honor.

John Parker, in my own practice, sole practitioner,

P16DCarH

representing LZGI, Moe, and Peter Ritz.

THE COURT:  Thank you.  Good afternoon to you.

All right.  Are there any different appearances in the case that had originally been in front of Judge Failla, which has now been reassigned to me, *Genius Group v. LZG International*, or are they all the same clients?

MR. BASILE:  Yes, your Honor.  Christopher Basile from The Basile Law Firm, P.C., on behalf of petitioner Genius Group Limited.

THE COURT:  All right.  Thank you.

MR. ROSE:  Joseph Rose at The Basile Law Firm on behalf of petitioner.

THE COURT:  Your last name?

MR. ROSE:  Rose.

THE COURT:  So you're at the same firm.

MR. ROSE:  Yes.

THE COURT:  Who's here for LZG Shareholders?

MR. PARKER:  John Parker, in the same capacity.

THE COURT:  Okay.  So did you appear in the case that had been in front of Judge Failla?

MR. PARKER:  I have not yet, no.

THE COURT:  On behalf of LZG?

MR. PARKER:  I have not yet, your Honor.

THE COURT:  Are you now the intervenor?  Who intervened on behalf of --

P16DCarH

MR. GUTCHESS:  Your Honor, we, the shareholders of LZG, intervened in that case.

THE COURT:  Right.

MR. GUTCHESS:  We represent the shareholders.  We're suing the company, LZGI, and also Genius Group.

THE COURT:  I see.  The names are in a different order on the other appearances.

All right.  Good afternoon to our court reporter, too.  Thank you.

As you all know, there are two separate lawsuits in front of two separate judges.  You either apparently so confused Judge Failla or convinced her that there's enough overlap that they ought to all be in front of the same judge.  I had the first filed case, and, in any event, after conferring with Judge Failla, it was our collective judgment that the cases should come to me, so you are here in front of me.

But these are two separate cases, as I understand them, involving really very different issues.  The case that was originally in front of Judge Failla, as I understand it, is a petition that was filed in aid of an arbitration that's been filed where?  Who is the petitioner in that case?

MR. BASILE:  That's me, your Honor.  Christopher Basile.

THE COURT:  So talk to me a little about your case.  Tell me the background, the status.

P16DCarH

MR. BASILE: Absolutely. So pursuant to an asset purchase agreement entered into between my client, Genius Group Limited, and LZG International, Inc., under section 18, it called for arbitration in front of the International Chamber of Commerce. We have commenced that action.

THE COURT: Okay. Hold on. Slow down.

In the asset purchase agreement, do I have that anywhere in the record in either case?

MR. BASILE: Yes, you do, your Honor. It's one of the exhibits that was filed with the memorandum of law in support.

THE COURT: Of?

MR. BASILE: Of the preliminary injunction.

THE COURT: Do you know what exhibit number?

MR. BASILE: I don't off the top of my head.

THE COURT: What does the language say about what is arbitrable?

MR. BASILE: Any and all manners of conflict arising under the asset purchase agreement --

THE COURT: Are you quoting?

MR. BASILE: I am not quoting.

THE COURT: I'd like to know exactly what it says.

Do you have a copy?

MR. BASILE: I do not in front of me, your Honor.

THE COURT: Can you get it?

MR. BASILE: We don't have a physical copy with us.

P16DCarH

THE COURT:  Go ahead with the rest of your background about your case.

MR. BASILE:  Certainly.  So we filed the -- we commenced the arbitration, and since that time we sought --

THE COURT:  When did you commence it, by the way?

MR. BASILE:  We commenced it in late October.

THE COURT:  Okay.

MR. BASILE:  And the purpose of us appearing in the S.D.N.Y. was we were trying to seek aid to aid the arbitration.

THE COURT:  The aid was the preliminary injunction that you want?

MR. BASILE:  Precisely.

THE COURT:  All right.  Now, as I understand it, Judge Failla granted leave for the shareholders to intervene in that case, correct?

MR. BASILE:  Yes, that's correct.

THE COURT:  All right.  Let me back up to one point. When did you move for a preliminary injunction at the time you filed your lawsuit?

MR. BASILE:  That is correct.  When we filed the petition, we moved the Court for an emergency TRO and for a preliminary injunction.

And, your Honor, if I may, I happen to have concise language for the arbitration provision in the asset purchase agreement.  If I may.

P16DCarH

THE COURT:  Yes.

MR. BASILE:  The agreement explicitly states, any dispute --

THE COURT:  Go slowly, please.

MR. BASILE:  Any dispute arising out of or in connection shall be referred to and finally resolved by arbitration.

THE COURT:  In connection with what?  Are there words missing?

MR. BASILE:  Yes.  It was within the agreement, and we don't have the agreement in front of me, but it is filed under ECF One, Exhibit One.

THE COURT:  Thank you.

I'm asking you this, and I'm giving a heads up to the lawyers for the shareholders, the question that I have is whether the shareholder grievances are covered by that provision or not.  So you all ought to be thinking about and considering that.

So you filed your petition and your motion for preliminary injunction on November 7 of 2024.  The intervention was granted when?

MR. BASILE:  The intervention was granted on December 10th.

THE COURT:  All right.  I want to speak with the lawyers for the shareholders.

P16DCarH

MR. GUTCHESS:  Yes, your Honor.

THE COURT:  That's you.

MR. GUTCHESS:  Yes, your Honor, that's me.

THE COURT:  Stand.

MR. GUTCHESS:  Yes.  Yes.  Yes.

THE COURT:  All right.  So you moved for leave to intervene in front of Judge Failla, presumably convincing her that something that was happening in front of her could impact your rights and you wanted the opportunity to be heard.  She granted that on December 10.  The motion had been pending by that time for over a month.

A week later I got from the parties to the case in front of her an agreement that what was the TRO should remain in place as an injunction pending resolution -- what's funny?

MR. GUTCHESS:  I'm sorry.  Because I think that counsel have led you astray, your Honor, and I was going to straighten that out.  I apologize for smiling.

THE COURT:  Pending the resolution of the arbitration, and I, on December 17, entered that relief, having never heard a word from you or your clients.

MR. GUTCHESS:  Yes.

THE COURT:  Even though you were granted leave to intervene on December 10.

MR. GUTCHESS:  Right.

THE COURT:  So what are you waiting for?

P16DCarH

MR. GUTCHESS:  Our understanding is December 10, when we were granted leave to intervene, she extended the TRO until December 18, and we were filing our opposition on December 17, right -- we had it prepared when they filed their stipulation.

THE COURT:  So why didn't you reach out to the Court and say, wait a minute --

MR. GUTCHESS:  It was literally an hour later.  We should have, yes.  But moving to reconsider, that's what we were doing, reaching out to the Court --

THE COURT:  Well, first of all, you didn't brief the standard for reconsideration.  You basically filed your opposition.

MR. GUTCHESS:  Right, your Honor.

THE COURT:  So the other question I have for you is why are you not -- notwithstanding your notice of the arbitration, you understand the issues in the arbitration, why are you not appearing or moving to intervene or somehow doing something in the arbitration to say to the arbitrators, by the way, we have this case and we'd like to be heard?

MR. GUTCHESS:  Your Honor, this arbitration has nothing to do with the shareholders.  We were never even given a --

THE COURT:  Wait a minute.  Wait a minute.

If the ICC decides that there was a breach of fiduciary duty for a misrepresentation or something wrong in

P16DCarH

connection with the asset purchase agreement, and it should therefore be rescinded, does that not impact your clients?

MR. GUTCHESS:  Your Honor, at the last hearing, they said they were not a fraudulent inducement arbitration.  We've never seen the arbitration claim.  They won't disclose it with us.

THE COURT:  Is that true?

MR. BASILE:  Yes, that is true, your Honor.  Arbitration is a private matter before all the parties in the arbitration action.  I invited my friend over here to make a request, written request pursuant to Article Seven of the ICC, and I will remind him once again, if he wishes to participate in the arbitration, he must make a written request to all of the parties in the arbitration and he must get a unanimous consent.

THE COURT:  Or ask the arbitrators.

MR. BASILE:  That's precisely --

THE COURT:  Why don't you do that?

It seems to me you're all playing games here.

MR. GUTCHESS:  Your Honor, we, the shareholders, never agreed to arbitrate anything.

THE COURT:  I know that, but you are claiming somehow that your rights could be affected, otherwise, why did you intervene?

MR. GUTCHESS:  Our rights, your Honor, arise out of

P16DCarH

disclosures, false disclosures made by Mr. Ritz, Mr. Hamilton, Mr. Moe, and their companies, right?

If they breached some agreement or breached some fiduciary duties, that's separate. But we're here because they falsely represented to the public key aspects of --

THE COURT: I don't want to hear the merits of your case. What I want to hear is practical solutions to -- you've all made a bunch of motions about procedural things, and it seems to me, as I say, you're all playing a lot of games here --

MR. GUTCHESS: So, your Honor --

THE COURT: -- about there being two separate lawsuits.

MR. GUTCHESS: The --

THE COURT: Let me finish.

Some of you want things consolidated. Some of you want things stayed. You want this to go forward. You want that to go forward. You want to be heard in their case, but only on what you want to be heard on. Genius wants to be heard in the case that was originally mine in connection with seeking a stay but it won't accept service of process.

The games have to stop.

MR. GUTCHESS: I agree. And, your Honor, let's go to the supposed special proceeding report --

THE COURT: Don't give me posturing. It is a special

P16DCarH

proceeding.  Not supposed.

MR. GUTCHESS:  So let's go to this special proceeding.

What happened is in the underlying transaction, Mr. Ritz and Mr. Moe issued themselves an additional 73 million shares.

THE COURT:  Those are the shares that are right now enjoined, right?

MR. GUTCHESS:  No, they -- what they've done is --

THE COURT:  Are those the shares that are frozen?

MR. BASILE:  Yes, they are, your Honor.

THE COURT:  That's what I thought.

MR. GUTCHESS:  Okay, your Honor.

THE COURT:  You disagree with that?

MR. GUTCHESS:  I do disagree with that.  That's only some of the shares that were frozen.

THE COURT:  So the statement, as far as it went, is true.

MR. GUTCHESS:  Those are some of the shares, your Honor.

THE COURT:  Those shares are frozen?

MR. GUTCHESS:  Those shares are frozen.

THE COURT:  Okay.

MR. GUTCHESS:  So the shareholders whom we represent, which are major shareholders, they had shares in a company that was then sold, and they were supposed to get Genius Group

P16DCarH

shares.

THE COURT:  Right.

MR. GUTCHESS:  They were restricted, right, until --

THE COURT:  What was restricted?  The shares?

MR. GUTCHESS:  The shares.

So they never got them.  They were restricted at the VStock transfer agent --

THE COURT:  They were to receive shares in addition to the 73 million?

MR. GUTCHESS:  They were to get -- the 73 million are only the excess shares that went to Ritz and Moe.  Our class plaintiffs had their own shares which were --

THE COURT:  But are you saying that those 73 million were also supposed to go to your shareholder clients?

MR. GUTCHESS:  They were never supposed to be issued. So those shares should never have been issued.

So our clients have, I don't know, I'll say 100 million shares that are tied up.  They were restricted and they were supposed to be released on September 16.  They were not released.  So our shareholders have lost $23 million since the issuance of these shares that they cannot get and they cannot sell.

THE COURT:  Which shares, the 73 million?

MR. GUTCHESS:  Not the 73 million.  The shares that they were issued in exchange for giving up --

THE COURT:  What are those?  How many?

MR. GUTCHESS:  Let me look.  Give me one moment.

THE COURT:  So let me just -- while you are fumbling, if you're saying that those 73 million shares that went to Ritz and Moe never should have been issued, and the parties in the other proceeding have frozen those shares so that nothing happens them, and you say they never should have been issued in the first place, how does that hurt you?

MR. GUTCHESS:  So we do not object to the 73 million being frozen.

THE COURT:  Okay.

MR. GUTCHESS:  It's only our shares, your Honor. There's no reason to restrict our shares from being given to our shareholders so they can sell them if they want to.

THE COURT:  Okay.  Let me interrupt you.  How many shares are you talking about?  That's what you were fumbling around for.

MR. GUTCHESS:  Yes.

THE COURT:  You're saying these additional shares shouldn't have been, pursuant to the asset purchase agreement --

MR. GUTCHESS:  Yes, and that -- and that, your Honor, closed back in March.  We collectively, just the intervenors alone, the named plaintiffs, own over 12 million shares.

THE COURT:  Could you please answer the question I

P16DCarH

asked you, which is how many shares are you saying your shareholder clients were entitled to receive pursuant to the asset purchase agreement?

MR. GUTCHESS:  Yes, your Honor.  I'll give you an exact number.

The named plaintiffs were entitled to receive 12,363,428 LZGI shares -- I'm sorry.  That was before the exchange.  401,000 --

THE COURT:  Wait a minute.  The 12 million is off?  That's wrong?

MR. GUTCHESS:  Because the exchange ratio at the 1.3 --

THE COURT:  Just answer the question.  How many shares are you saying your clients were entitled to receive?

MR. GUTCHESS:  401,410 shares.

THE COURT:  401,000 --

MR. GUTCHESS:  410 shares.

THE COURT:  Is that only the named plaintiffs?

MR. GUTCHESS:  Yes, that is only the named plaintiffs.

THE COURT:  Aren't you purporting to represent the class?

MR. GUTCHESS:  We are seeking to represent the class.

THE COURT:  How much are you saying the class should have gotten?

MR. GUTCHESS:  I'm going to have to check on that,

P16DCarH

your Honor.

THE COURT:  Okay.  Those shares have been issued or they have not?

MR. GUTCHESS:  They have been issued, and they're with the transfer agent, and we're waiting for the transfer agent to release them.

THE COURT:  Judge Failla froze those as well?

MR. GUTCHESS:  They're all frozen at this point, your Honor.

THE COURT:  You object to that piece being frozen?

MR. GUTCHESS:  Yes.  Yes.

THE COURT:  Where is the downside to you if the shares get held by the transfer agent, preserving the status quo pending resolution of both your case and the other arbitration?

MR. GUTCHESS:  So, your Honor, there's no company left for LZGI, so there's nothing to give back to us.  What Mr. Ritz and Mr. --

THE COURT:  So these shares were shares in LZG --

MR. GUTCHESS:  They were each -- each GNS share was issued for a certain number of LZG shares, and, in exchange, LZG transferred all of its assets to GNS.

THE COURT:  Right.

MR. GUTCHESS:  Right.

THE COURT:  So these shares, the 401,410 shares is shares in what?

P16DCarH

MR. GUTCHESS:  In GNS.

THE COURT:  Right.  So what's the downside to you and your clients who are seeking money damages in having those shares held by the transfer agent pending resolution of the arbitration and lawsuit?

MR. GUTCHESS:  Your Honor, that's our point.  It's all money damages, right?

So it's movant, the person moving for preliminary injunction, who has to show irreparable harm, and our point is there is no irreparable harm.  It's all money damages.  So upon that, there's no basis to enjoin --

THE COURT:  It's not all money damages yet, though.  It's who is entitled to hold shares, whatever their worth.  We're not dealing with the worth of them.

MR. GUTCHESS:  It's still money damages, your Honor.

THE COURT:  Your objection is only to the 401 and change shares?

MR. GUTCHESS:  Yes.

THE COURT:  Yes?

MR. GUTCHESS:  Yes.

THE COURT:  Okay.  Have a seat.

All right.  I have before me, and you've all kind of -- these are like moving targets with all of you, and that needs to stop.  I will get a ruling on the preliminary injunction motion.  You're calling it a motion for

P16DCarH

reconsideration. You don't meet the standard, as far as I'm concerned. You should have put in an opposition.

But having said that, given the confusion with the case coming from Judge Failla to me, and your supposed understanding that you're allowed to file something that day in front of Judge Failla, and the transfer happening at exactly the same time, I will entertain your position with respect to the opposition.

Pending my ruling, the order that I entered on the 17th of December, in which I adopted the stipulation, will remain in effect until I issue a ruling, but I'll get a ruling to you very promptly.

So that takes care of the preliminary injunction. I have before me as well, then, a number motions in a number of different cases. So in the case that was originally before me, the shareholder case, I have a motion to consolidate that with the case that had been in front of Judge Failla.

Correct?

MR. GUTCHESS: Correct.

THE COURT: Who made that motion? You?

MR. GUTCHESS: Yes.

THE COURT: So it's by the plaintiffs in my case, wanting to consolidate with the petition in aid of arbitration.

MR. GUTCHESS: Yes, your Honor.

THE COURT: Why?

P16DCarH

MR. GUTCHESS:  Because we -- well, we thought they both should be before the same judge.

THE COURT:  They're before the same judge.  That doesn't mean they get consolidated.

MR. GUTCHESS:  Right.  So since they're before the same judge, we're okay with them not being consolidated.

THE COURT:  So withdraw your motion.

MR. GUTCHESS:  We will.  We withdraw.  Thank you.

THE COURT:  File a withdrawal, please.

MR. GUTCHESS:  We will.

THE COURT:  All right.  That's it for your case.  Oh, no.  There's a motion for alternative service, right?

MR. GUTCHESS:  Yes.

THE COURT:  So what is going on with the defendants here?  Genius is now telling me, you filed an appearance on the docket.

MR. HOFFNER:  I'm happy to address this.

THE COURT:  Go ahead.

MR. HOFFNER:  Just to be clear, this case was filed in October.  The plaintiffs made no --

THE COURT:  I don't want to hear the argument.  Just tell me what your position is.

MR. HOFFNER:  Genius Group had never been served.  I filed a notice of appearance.  I view that as accepting service.

P16DCarH

THE COURT:  That's what I'm asking really.

MR. HOFFNER:  All their arguments have no bearing on Mr. Hamilton.  He is not a party to these other cases.  He lives in Singapore.  There is absolutely no basis -- they can serve him under the Hague.  And I have personal knowledge in another case that it's not so hard to serve under the Hague.  It takes four or five weeks.  They filed in October.  They could easily --

THE COURT:  Mr. Hoffner --

MR. HOFFNER:  Yes, your Honor.

THE COURT:  -- slow down.  I'm just getting to know everybody and so is our court reporter, so if you would say your names when you first speak.

So you are appearing.  You are waiving any issue with respect to service on behalf of Genius.  Right?

MR. HOFFNER:  The company only.

THE COURT:  I'm sorry?

MR. HOFFNER:  Only the company, not for Mr. Hamilton.

THE COURT:  Do you represent Mr. Hamilton?

MR. HOFFNER:  I would likely represent Mr. Hamilton were he to be served.

THE COURT:  All right.  But is he a party to the other case?

MR. HOFFNER:  He is not a party to the other case.

THE COURT:  All right.  So that takes care of your

P16DCarH

motion with respect to Genius.

MR. GUTCHESS:  Thank you.

THE COURT:  It's moot, correct?

MR. GUTCHESS:  Thank you.

THE COURT:  Because you're accepting service, correct?

MR. HOFFNER:  Yes, your Honor.

And while I have your attention, pursuant to your Honor's rules, we would like to make a pre-motion --

THE COURT:  Not right now.  Have a seat.  I want to take care of the motion I'm dealing with.

So are you renewing your motion with respect to Mr. Hamilton?

MR. GUTCHESS:  Yes, your Honor.

THE COURT:  What have you done to serve him?  Why can't you serve him under the Hague?

MR. GUTCHESS:  Obviously Mr. Hamilton is well aware of the suit.

THE COURT:  That's not the standard under the Rules.

MR. GUTCHESS:  We have tried --

THE COURT:  How?  I'm asking.

MR. GUTCHESS:  I believe we issued service under the Hague.  Mr. Franco was taking care of that.

THE COURT:  Who?

MR. GUTCHESS:  Mr. Franco, my colleague, your Honor.  If --

P16DCarH

THE COURT:  Well, then why don't you file a proof of service on the docket?

MR. GUTCHESS:  Your Honor, we'll serve through the Hague on Mr. Hamilton.  No problem.

THE COURT:  Great.  So that motion is moot, denied as moot.

Then whatever application, Mr. Hoffner -- if you're going to be appearing for Mr. Hamilton, whatever application you have, you can write a letter requesting leave to make a motion if there is a motion.

Now, what were you going to say to me with respect to the group --

MR. HOFFNER:  I'm sorry?

THE COURT:  You started to say "pursuant to my rules."

MR. HOFFNER:  Yes, your Honor.  We believe this is more gamesmanship.

THE COURT:  I don't want to hear that kind of stuff.

What is the motion you want to make?

MR. HOFFNER:  A motion to dismiss the class action on behalf of --

THE COURT:  On behalf of Genius?

MR. HOFFNER:  On behalf of Genius.

THE COURT:  Okay.  When do you want to file?

MR. HOFFNER:  I'd like to work out a briefing schedule with Mr. Gutchess if that's possible.

THE COURT:  What are the grounds?

MR. HOFFNER:  Five grounds make this case completely frivolous.  The first primary one is the named plaintiffs here are all LZGI shareholders.  Not one of them ever purchased a share of Genius Group.

They are purporting to represent a class of purchasers of Genius Group from December '23 to September '24.  Not one of these individuals has owned a share of Genius Group.  Not one of them purchased in the open market.

THE COURT:  All right.  What is your next ground?

MR. HOFFNER:  Next ground is not one of these investors relied on a single statement by my client that's in the complaint.  All of them owned securities before any of those statements were made.

THE COURT:  Okay.

MR. HOFFNER:  Third ground is there's no scienter. The only notice for fraud that they purport to put forward to the Court is the Genius Group was looking to get additional financing and, therefore, they were wiling to look the other way of the fraud that was being perpetrated on them by Mr. Ritz and Mr. Moe.

Fourth, there are no fraudulent statements.  These are statements of opinion regarding the potential benefits of the transactions.

THE COURT:  Okay.

P16DCarH

MR. HOFFNER:  And, fifth, there's no loss foundation.

THE COURT:  Okay.

MR. HOFFNER:  There's not a single allegation in the complaint about a stock drop after an alleged fraudulent misstatement.

THE COURT:  Okay.  When can you file your motion?

MR. HOFFNER:  I'd like at least three weeks, your Honor.

THE COURT:  Today is January 6.  January 27.

MR. HOFFNER:  Thank you, your Honor.

THE COURT:  Then, in terms of opposition, the normal rules will apply, unless I have a request to alter that.  All right.

MR. GUTCHESS:  Thank you.

THE COURT:  So the local rules apply with respect to the rest of the briefing schedule.  Motion will be filed by the 27th, and we'll take it from there unless you talk to each other and come back to me for some other kind of relief.

All right.  So I believe that's everything that's pending in the shareholder case, right?

MR. GUTCHESS:  From our side, your Honor, yes.

THE COURT:  Is there anything else?

MR. GUTCHESS:  There is a motion to stay --

THE COURT:  Okay.

MR. GUTCHESS:  -- which I think --

P16DCarH

THE COURT:  Yes.  With respect to the motion to stay, my initial reaction was how is Genius moving to stay a case in which it hasn't appeared, but you're now appearing.  So the next question, though, is you're moving to dismiss, so I assume you don't want me to stay the case?

MR. HOFFNER:  Go ahead.  This is his motion, just in the other case, so it's a little confusing.

MR. BASILE:  Yes, your Honor.

THE COURT:  Well, this is the bizarre thing.  You're all filing things in the wrong case and asking me to apply the ruling to two cases that are not consolidated.

MR. BASILE:  Your Honor, The Basile Law Firm filed the motion to stay in the petitioned special proceeding action to stay the *Carey* litigation action.

THE COURT:  Yes.  Why?  That's bizarre.  You don't file in one case seeking to stay a different case.

MR. BASILE:  The reason we filed that is because we believed there are common issues of law and fact that overlapped the arbitration, and pursuant to the FAA, the courts usually give deference to arbitration when there are similar and common facts and substantive issues.  Naturally, now that there's going to be a briefing schedule on the motion to dismiss, I don't know what this means for our motion to stay.

THE COURT:  Well, figure it out --

MR. BASILE:  Okay.

P16DCarH

THE COURT:  -- and figure out if you're going to withdraw it.

MR. BASILE:  Understood.

THE COURT:  If you're not going to withdraw it, say so, so the other side can put in an opposition.

Plaintiff.

MR. GUTCHESS:  Yes, your Honor.  We have --

THE COURT:  But that may alter, depending on what you want to do.  I mean, I don't know how you come to a conference and are not prepared to tell me things about these cases that you've been living with for three months.  I got it right before the holidays and I'm more up to speed than you all are.

So let me know whether you're pressing the motion to stay.  For now, it will be denied without prejudice, and if you want to renew it, renew it.

MR. BASILE:  All right.

MR. GUTCHESS:  And, your Honor, may I request if they renew it, that both parties appear, LZG corporate counsel and Genius corporate counsel, they can just agree to disclose all the arbitration proceedings to us if they think they impact us, the shareholders.

THE COURT:  Well, I do have to say for you to move the shareholders' case and argue that the issues are overlapping and they're going to impact your arbitration or your arbitration may somehow impact their claims and you won't

disclose that to them, it's somewhat disingenuous. I certainly can't decide whether there are overlaps such that there should be stays without knowing what the arbitration is about, so --

MR. HOFFNER: Your Honor, with respect to a question you asked earlier to Mr. Gutchess that he didn't have the answer to, and I think it's relevant to this question, and that is, would the class that he purports to represent have any right to LZGI shares, and the answer is absolutely not.

THE COURT: He said he doesn't oppose the stay with respect to them.

Didn't you?

MR. HOFFNER: That was a different question. I was saying the shares of LZGI subject to preliminary injunction really have no bearing whatsoever in the class action, because the class action purports to be on behalf of a class of purchasers of Genius --

THE COURT: I get that. I was asking with respect to the preliminary injunction matter, though.

Am I misunderstanding that? You said you don't object to the injunction with respect to the 73 million shares that were issued to --

MR. GUTCHESS: Correct. You're correct. I don't object. If they want to freeze Mr. Ritz's shares, that's fine with me.

THE COURT: They've agreed between and among

P16DCarH

themselves they're going to freeze everything.  Right?

MR. BASILE:  (Nodding head.)

THE COURT:  So the only question is you're objecting to the freezing of 401,410 shares?

MR. GUTCHESS:  Correct, your Honor.

THE COURT:  So do I have everything clear here?

MR. GUTCHESS:  (Nodding head.)

MR. BASILE:  (Nodding head.)

THE COURT:  Okay.  Anything else then that's pending or needs action by me at this point?

MR. BASILE:  I don't think so, your Honor.

THE COURT:  Yes, in the back.  You're very quiet.  Is there anything you need?

MR. PARKER:  I'll just state this.  We believe --

THE COURT:  You are who and you represent --

MR. PARKER:  My name is John Parker, representing LZGI and Ritz and Moe.

THE COURT:  Thank you.

MR. PARKER:  We believe our disputes with Genius Group are contractual in nature.  We are working to resolve those.  We believe if we resolve those, many of the claims in the shareholders case will go away, will be moot, and that's the reason to freeze the shares, because if our agreement is rescinded, assets back to LZGI and the share -- transaction gets nullified.

P16DCarH

So no shares should be released until the resolution between Genius and LZGI is rescinded.

THE COURT:  I understand.  Did you weigh in on the opposition or on the preliminary injunction papers?

MR. PARKER:  We did not.

THE COURT:  But you are weighing in now?

MR. PARKER:  I am, yes.

THE COURT:  File something.

MR. PARKER:  Yes.

THE COURT:  So I have everything in one place.

MR. PARKER:  We will, your Honor.

THE COURT:  When?

MR. PARKER:  Probably a week -- two weeks or three weeks.

THE COURT:  No.

MR. PARKER:  A week.

THE COURT:  A week.  I'm going to rule promptly on the preliminary injunction.  I'm obligated to do that.

MR. PARKER:  Sure.

THE COURT:  You're joining in the position of the people who moved, aren't you?

MR. PARKER:  Yes.

THE COURT:  Promptly.  Frankly, I would say by the end of the week.

MR. PARKER:  (Nodding head.)

P16DCarH

THE COURT:  Today's the 6th.  I'd like the papers by the 10th, so that I can rule promptly.

MR. GUTCHESS:  Your Honor, may I request, since the preliminary injunction is based on this arbitration, we haven't seen it, so to the extent they're claiming they need to enjoin shares based on the arbitration, that they also disclose the arbitration and the status --

THE COURT:  No.  No.  I mean, their position is, in the arbitration, as I understand, the transaction should be rescinded.

MR. BASILE:  That is correct, your Honor.

THE COURT:  So if the transaction is rescinded, I mean, that's really all you need to know.  If the transaction is rescinded, there would be no Genius shares.

Correct?

MR. PARKER:  Correct.

THE COURT:  The shares you're fighting about.

MR. PARKER:  That is correct, your Honor.

THE COURT:  All of the ones that have been frozen.

MR. PARKER:  All of them.

THE COURT:  So that's really all you need to know, isn't it?

MR. GUTCHESS:  Your Honor, when I read the transcript -- I wasn't there in the last hearing.  When I read the transcript, it didn't seem like there was a fraudulent

P16DCarH

inducement claim, trying to rescind it, and while Mr. Parker said there's a contractual issue they're to work through --

THE COURT:  The contractual issue is the asset purchase agreement, right?

MR. PARKER:  Yes, your Honor.

MR. GUTCHESS:  Right.  I'm sorry.  I don't like to take people's word for something.  If they say they're seeking to rescind it, I want to see they're actually doing that.

THE COURT:  They're officers of the court.  I'm taking them at their word that that is the relief they're seeking.

You represent whom?  You in the back.

MR. RITZ:  I'm sorry.  My name is Peter Ritz.  I'm just one of the defendants.

THE COURT:  Oh, Mr. Ritz.  Thank you.

All right.  Is there anything else then?

So I will get you an order on the preliminary injunction as promptly as I can after we receive the final briefing on Friday.  I suppose, coming from the shareholders, if you wish to respond to what they file on Friday, you may do so by the close of business on Monday.

MR. GUTCHESS:  Thank you, your Honor.

THE COURT:  But I don't want a rehash of what you've already said.  All right?  If they introduce something new, fairness says you should have an opportunity to respond to that, but I'm strongly warning you I don't want you to just

P16DCarH

repeat what you said in your original papers.  Okay?

            MR. GUTCHESS:  Thank you.

            THE COURT:  All right.  Anything else from anyone?

            Then we will stand adjourned.  Thank you all.

            (Adjourned.)